**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| JULIO NIEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12CV500–HEH |
| | ) | |
| CCC TRANSPORTATION, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e through 2000e-17. It is presently before the Court on Defendant CCC Transportation, LLC's ("CCC" or "the Company") motion to dismiss Plaintiff Julio Nieves's ("Nieves") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). This Court will dispense with oral argument because it would not materially aid in the decisional process. For the reasons set forth herein, CCC's motion will be denied.

## I. BACKGROUND[1]

CCC hired Nieves, a native of Puerto Rico, as a truck driver in August of 2005. (Compl. at ¶ 8.) Nieves alleges that, as a result of his "quality work product, good behavior, and ability to converse in Spanish," he was "entrusted" with the responsibility

[1] As required by Rule 12(b)(6), the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

of "recruit[ing] and train[ing] other Hispanic employees." (*Id.* at ¶ 9.) After his first two years of service, however, Nieves's work environment purportedly became hostile.

In July 2007, Nieves came under the supervision of Walter Whitaker ("Whitaker"),[2] the "Terminal Supervisor" at CCC's New Kent County facility. (*Id.* at ¶ 10.) Nieves claims that he became subject to harassment starting on July 20, 2007, including "jokes about his name and speech, questions about his skin tone, [and] oral and physical intimidation." (*Id.* at ¶ 11.) He also received "threats and assaults" from his supervisor. (*Id.*) For instance, he alleges that Whitaker would "purposefully mispronounce [Nieves's] name in a number of different mocking fashions," "make comments to [him] such as[,] 'Why are you so Black?,'" and "continually insinuate that someone with such dark skin color as Nieves should not be fluent in Spanish." (*Id.*)

Nieves eventually complained to CCC's Vice President on approximately February 12, 2008[3] concerning the alleged ongoing "mistreatment and physical assaults." (*Id.* at ¶ 12.) The next day, on February 13, CCC terminated Nieves's employment. (*Id.*)

---

[2] The Complaint initially identifies Nieves's supervisor as "Walter Whitaker" (Compl. at ¶ 10), but elsewhere makes reference to "his supervisor" as "Williams." (*Id.* at ¶¶ 11-12.) It appears that "Walter Whitaker" and "Williams" refer to the same person. In the interest of consistency, this Memorandum Opinion will refer to Nieves's supervisor as Walter Whitaker.

[3] It is not clear on which dates the events alleged in this case actually occurred. In his Complaint, Nieves first alleges that he suffered harassment "through February 1, *2009*." (Compl. at ¶ 11 (emphasis added).) He later alleges, however, that he complained to CCC's Vice President on February 12, *2007*," and that he was discharged "[t]he next day" on February 13, *2008*." (*Id.* at ¶ 12 (emphasis added).) In order to reconcile these discrepancies, the Court assumes for present purposes that Nieves complained and was terminated in February 2008. Indeed, the Charge of Discrimination that Nieves filed with the Equal Employment Opportunity Commission following his termination from employment was filed on February 15, 2008, consistent with this assumption.

Nieves contends that the Company "failed to properly investigate" his "complaints of racial harassment" or "take corrective action" before discharging him. (*Id.* at ¶ 13.)

On February 15, 2008, Nieves lodged a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of national origin and retaliation. (*Id.* Ex. A, at 3.) It appears that he initially alleged racial discrimination as well, though the checkbox marked "Race" is crossed out and initialed "JN." (*Id.*) After receiving notice from the EEOC of his right to sue, Nieves filed suit in this Court on July 11, 2012. Count I of his Complaint alleges discrimination on the basis of race and national origin in violation of Title VII. Count II alleges that CCC fired him in retaliation for engaging in protected activity under Title VII—namely, complaining to management regarding his purported mistreatment.

CCC moved to dismiss Nieves's Complaint on August 9, 2012. Nieves has responded and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual

allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

CCC advances several arguments in support of its motion to dismiss. First, CCC contends that Nieves failed to exhaust his administrative remedies with the EEOC on his claim of racial discrimination, such that Count I must be dismissed. More precisely, the Company argues that because Nieves neither checked the "Race" box on his Charge of Discrimination nor explicitly mentioned racial animus in the narrative body of the Charge, this Court lacks jurisdiction over Nieves's Title VII claim for race-based discrimination. Second, CCC asserts that Nieves's Complaint does not contain sufficient factual allegations to support his discrimination or retaliation claims. Because it raises jurisdictional concerns, this Court will first address the assertion that Nieves failed to exhaust his administrative remedies. *See Ruhugas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (explaining the court's obligation "to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case").

**A. Exhaustion of Administrative Remedies**

Before a plaintiff may sue under Title VII, he must exhaust his administrative remedies by filing a sworn charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002). The charge must be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)). After doing so, the aggrieved party may initiate a civil action based on the claims contained in his EEOC charge only upon receipt of a right-to-sue letter. *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) (citing 42 U.S.C. § 2000e-5(f)(1)). The failure by a plaintiff to exhaust his administrative remedies divests the federal courts of subject matter jurisdiction over the claim. *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995).

"The scope of the plaintiff's right to file a federal lawsuit is determined by the . . . contents" of the charge submitted to the EEOC. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Specifically, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). This requirement ensures that the claimant's "employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Consistent with the foregoing, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on

one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300.

Here, CCC contends that Nieves's decision to leave marked only the "National Origin" and "Retaliation" boxes on his EEOC charge, and to scribble over the box checked "Race," bars him from litigating a race discrimination claim in this Court. Indeed, courts have *considered* the particular boxes checked on a claimant's EEOC charge as a factor in determining the permissible scope of a later lawsuit. *See, e.g.*, *Jones*, 551 F.3d at 301 (concluding that, because the plaintiff had "checked only the 'retaliation' box on her EEOC charge and left unchecked the boxes for 'age,' 'sex,' or 'race,'" she "failed to exhaust her administrative remedies with regard to those claims"); *Miles*, 429 F.3d at 492 (dismissing the plaintiff's retaliation claim where she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation").

But a plaintiff is not strictly limited to those discrimination claims expressly "stated in the initial charge." *Evans*, 80 F.3d at 963. Rather, a plaintiff may proceed with any claims that *reasonably flow from* the contents of the original complaint. *See Miles*, 429 F.3d at 491 ("While the EEOC charge defines the scope of the plaintiff's right to institute a civil suit, an administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination") (internal citation, quotation marks, and alterations omitted). In attempting to cabin the reach of Nieves's lawsuit based only on the boxes

that Nieves did or did not mark on his EEOC charge, CCC's jurisdictional challenge misses the mark.

As an initial matter, this Court finds that, notwithstanding his decision to unmark the "Race" box on his charge form, Nieves adequately alleged race-based discrimination in the narrative explaining his claims. For example, he complains that he was "harassed through . . . questions about [his] skin tone, . . . and cursed by a White co-worker." (Compl. Ex. A, at 3.) Though concise, these allegations sufficiently put CCC on notice of Nieves's racial discrimination claim under Title VII.

Moreover, the Fourth Circuit has made clear that if the claims in a plaintiff's "judicial complaint are *reasonably related to* [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247-48 (4th Cir. 2000) (emphasis added). In this case, even if the Court construed Nieves's EEOC charge not to contain express allegations of race discrimination, the Court would nonetheless find that the claim contained in Nieves's judicial Complaint is "reasonably related to" his administrative allegations. Simply put, the allegation that a Caucasian co-worker harassed Nieves on the basis of his "skin tone" readily gives rise to an inference of racial animus.

Lastly, the Court notes that Nieves's claim of racial (Hispanic) discrimination bears a close relationship to his charge of national-origin (Puerto Rico) discrimination. For that reason, an investigation by CCC of Nieves's explicit allegation of national-origin discrimination would likely also have uncovered any race-based discrimination on the

part of the Company. Accordingly, this Court cannot find that the scope of Nieves's judicial discrimination claims unreasonably exceeds the limits of his administrative complaint. This Court has jurisdiction over the instant claims.

**B. Plausibility Under Rule 12(b)(6)**

In the alternative, CCC seeks dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Regarding the hostile work environment claim, CCC argues that the allegations of misconduct are not sufficiently severe to rise to an actionable level. (Def.'s Mem. at 6-7.) And in challenging the retaliation claim, it argues that Nieves's allegations fail to establish that he engaged in any protected activity. Contrary to CCC's arguments, however, federal pleading standards are not so exacting as to require a plaintiff to include "detailed factual allegations" proving his case on paper. *Twombly*, 550 U.S. at 555 (citations omitted). Instead, it need only allege enough factual matter "to raise a right to relief above the speculative level," *id.* (citation omitted), such that the complaint is "plausible on its face." *Id.* at 570. Applying this standard, Nieves' Complaint survives Rule 12(b)(6) scrutiny and the litigation proceeds.

**1. Hostile Work Environment**

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). One such theory of discrimination involves a hostile work environment claim, in which a plaintiff must show that: 1) he experienced unwelcome harassment; 2) the harassment was based on a protected characteristic; 3) the harassment was sufficiently severe or

pervasive to alter the conditions of employment; and, 4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (citing *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). CCC does not challenge the first or fourth elements, instead asserting that Nieves conflates national origin with race such that the protected characteristic is unclear. CCC also argues that the third element is not satisfied since there is insufficient specificity as to the nature of the harassment.

According to CCC, any racially-charged comments directed at Nieves had "nothing to do with his national origin." (Def.'s Mem. at 6.) CCC also charges that the Complaint contains only "one specific comment . . . '[w]hy are you so Black?'" Neither of these arguments succeeds, because each characterizes the pleadings in a light favorable to CCC. Indeed, the Company argues that such comments "could just as easily be the result of some benign ignorance"— an inference *favorable to CCC*. (Def.'s Mem. at 7.) But at this stage of the litigation, the Court must view the allegations in the light most *favorable to Nieves*. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Construing the Complaint in the appropriate manner, the allegations demonstrate an overlap between racial animus and national origin discrimination.

In emphasizing the dearth of specifically quoted instances of harassment, the Company also overlooks the import of several generalized allegations of harassment contained in the Complaint. For example, Nieves alleged that Whitaker made "jokes about his name and speech," questioned him about his "skin tone," and in this context made "oral and physical" threats directed at Nieves. (Compl. at ¶ 11.) The Complaint

also alleges that Whitaker would "purposefully mispronounce [Nieves's] name in a number of different mocking fashions." (*Id.* at ¶ 11.) Such comments may be fairly construed by a reasonable trier of fact to purposely insult a person of Puerto Rican origin. And by "*continually* insinuat[ing] that someone with such dark skin color as Nieves should not be fluent in Spanish," (Compl. at ¶ 11 (emphasis added),) the Court could reasonably infer that harassment was "sufficiently severe or pervasive to alter the conditions of employment." *Baqir*, 434 F.3d at 746. At the pleading stage, it would be impermissibly exacting to demand that Nieves specifically enumerate the number of times that Whitaker engaged in the alleged misconduct. *See, e.g., Twombly*, 550 U.S. at 555 (citations omitted) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").

Whether Nieves ultimately proves racial or national origin discrimination (or both) is not the question at this stage of the proceedings. Rather, the Question is whether he has pleaded facts that, if true, demonstrate a plausible claim to relief. Under this initial standard of review, the motion to dismiss the hostile work environment claim must be denied.

**2. Retaliation**

Title VII prohibits employers from "discriminat[ing] against any of [its] employees . . . *because* [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (emphasis added). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment

action; and (3) a causal link between the protected activity and the employment action. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff may satisfy the first of these elements by showing that he responded to an employment practice that he "reasonably believes is unlawful," regardless of whether it is actually unlawful. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006) (citations omitted).

In this case, CCC challenges only the first element, arguing that "[i]t is far from clear from the allegations in the Complaint that Plaintiff engaged in a protected activity." (Def.'s Mem. at 8.) In support of this argument, the Company challenges the sufficiency of the claims on two fronts. First, it argues that it is unclear of what "mistreatment" Nieves complained on the day before he was fired. (Compl. at ¶ 12.) Second, CCC again takes issue with Nieves's apparent conflation of national origin discrimination with racial discrimination. Neither argument has merit.[4]

Although Nieves's alleges only that he complained about "mistreatment," it is clear from the context of the Complaint that he refers to the harassment alleged in the immediately preceding paragraph. (*Compare* Compl. at ¶ 11 *with* Compl. at ¶ 12.) And as the Court has already indicated, *supra* at Section III(B)(1), Nieves sufficiently alleges the existence of a hostile work environment. Assuming the truth of the allegations, he

[4] Additionally, CCC takes umbrage with an apparent typographical error, noting that it is "unclear if [Nieves] was terminated February 13, 2007 or February 13, 2008." (Def.'s Mem. at 8-9.) Although the Complaint indicates that Nieves complained of the harassment on February 12, 2007, it then states that "[t]he next day, on February 13, 2008 Nieves was terminated from employment." (Compl. at ¶ 12.) Regardless of this apparent typographical error, the point is that Nieves was fired the day immediately after he brought his concerns to management. This is clear enough from the Complaint.

"reasonably believe[d]" that he was engaging in protected activity when he expressed concerns about a hostile work environment to management. *Jordan*, 458 F.3d at 338 (citations omitted). It does not matter that Nieves appears to conflate racial discrimination with national origin discrimination—the two overlap here, *see* discussion at Section III(A), *supra*. Accordingly, the Complaint sufficiently alleges that Nieves engaged in protected activity, and so the motion to dismiss his retaliation claim must be denied.

## IV. CONCLUSION

For the reasons stated herein, the Court will deny CCC's Motion to Dismiss. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept. 6, 2012
Richmond, Virginia